No. 24-50784

---

# In the United States Court of Appeals for the Fifth Circuit

◆

UNITED STATES OF AMERICA,

PLAINTIFF–APPELLEE

V.

MIGUEL ANGEL DELGADO JR.,

DEFENDANT–APPELLANT

———◆———

On Appeal from the United States District Court Western District of Texas, El Paso Division, No. 3:23-cr-00466-KC

———◆———

**BRIEF OF APPELLANT**

———◆———

CLOUTHIER LAW, PLLC
Susan J. Clouthier
Tex. Bar. No. 24062673
9950 Woodloch Forest Dr, Ste 1300
The Woodlands, Texas 77380
Telephone: (346) 443-4300
Fax: (346) 443-4343
susan@clouthierlaw.com

**Attorney for Appellant**
**Miguel Angel Delgado, Jr.**

ORAL ARGUMENT REQUESTED

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 5th Cir. R. 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

District Judge:                 The Honorable Kathleen Cardone

Appellant:                      Miguel Angel Delgado, Jr.

Counsel for Appellant:          Susan Clouthier
                                Gage S. Fender
                                Clouthier Law, PLLC
                                9950 Woodloch Forest Dr, Ste 1300
                                The Woodlands, Texas 77380

Trial Counsel for Appellant:    Veronica Teresa Lerma
                                Eduardo N. Lerma, Sr.
                                Lerma Law
                                1417 Montana Avenue
                                El Paso, Texas 79902

United States Attorney:         Debra P. Kanof
                                Patricia Aguayo
                                Sarah Valenzuela
                                United States Attorney's Office
                                700 E. San Antonio Street
                                Suite 200
                                El Paso, TX 79901

                                Joseph H. Gay , Jr.

2

Assistant U.S. Attorney
601 N.W. Loop 410
Suite 600
San Antonio, TX 78216

Olimpia E. Michel
US Department of Justice
4 Constitution Square
150 M St. NE
Room 7-1122
Washington, DC 20002

/s/ *Susan J. Clouthier*
Susan J. Clouthier

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant, Miguel Angel Delgado, Jr., respectfully requests oral argument. Although Appellant represents the facts and legal arguments are thoroughly presented in this brief and in the record, Appellant suggests that the decisional process of this Court would be significantly aided by oral argument. This case concerns an in-depth factual analysis of Appellant's conduct in relation to both 18 U.S.C. § 242 and 18 U.S.C. § 1519; Appellant contends that this Court would benefit from counsel explaining these facts which may shed further light upon the application of authority in this case. Accordingly, Appellant requests oral argument.

# TABLE OF CONTENTS

Certificate of Interested Persons ............................................................. 2

Statement Regarding Oral Argument ...................................................... 4

Table of Authorities........................................................................... 7

Subject Matter and Appellate Jurisdiction ........................................... 10

Statement of the Issues..................................................................... 11

Statement of the Case ...................................................................... 12

   I.   Procedural History. ................................................................... 12

   II.  Evidence deduced at trial............................................................ 15

      A.  October 20, 2019 incident. ..................................................... 15

      B.  June 15, 2020 incident. ........................................................... 19

      C.  Other Testimony. .................................................................. 27

Summary of the Argument ................................................................ 29

Argument and Authorities ................................................................. 32

   I.   Standard of Review. .................................................................. 32

   II.  Delgado did not engage in an objectively unreasonable use-of-force, in violation of 18 U.S.C. § 242. .................................................. 33

      A.    Delgado, in two tense, uncertain, and rapidly evolving situations, responded appropriately with the level of force that he thought was commensurate with the situation............................... 36

      B.    *United States v. Diaz* shows that Delgado's responses to ongoing and unpredictable situations were not objectively unreasonable. ..................................................................... 39

III. The Government failed to prove beyond a reasonable doubt that Delgado acted with the requisite intent to impede, obstruct, or influence an investigation. .................................................................. 43

CERTIFICATE OF SERVICE ........................................................................... 49

CERTIFICATE OF COMPLIANCE ................................................................. 50

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Hays,*
  65 F.4th 736 (5th Cir. 2023) ................................................................34

*Anderson v. Creighton,*
  483 U.S. 635 (1987) ............................................................................33

*Bazan v. Hidalgo Cnty.,*
  246 F.3d 481 (5th Cir. 2001) ..............................................................34

*Cloud v. Stone,*
  993 F.3d 379 (5th Cir. 2021) ..............................................................34

*Graham v. Connor,*
  490 U.S. 386 (1989) ................................................................34, 35, 36

*Griggs v. Brewer,*
  841 F.3d 308 (5th Cir. 2016) ..............................................................35

*Poole v. City of Shreveport,*
  691 F.3d 624 (5th Cir. 2012) ........................................................34, 35

*Pullen v. United States,*
  164 F.2d 756 (5th Cir. 1947) ..............................................................38

*Ramirez v. Knoulton,*
  542 F.3d 124 (5th Cir. 2008) ..............................................................36

*Screws v. United States,*
  325 U.S. 91 (1945) ..............................................................................33

*Trammell v. Fruge,*
  868 F.3d 332 (5th Cir. 2017) ..............................................................35

*United States v. Brugman,*
   364 F.3d 613 (5th Cir. 2004).....................................................32, 33, 34

*United States v. Cervantes,*
   107 F.4th 459 (5th Cir. 2024) .........................................................31, 32

*United States v. Diaz,*
   498 F. App'x 407 (5th Cir. 2012).......................................33, 34, 39, 40

*United States v. Hassler,*
   992 F.3d 243 (4th Cir. 2021) ................................................................43

*United States v. Hunt,*
   526 F.3d 739 (11th Cir. 2008) .......................................................44, 45

*United States v. Kernell,*
   667 F.3d 746 (6th Cir. 2012) ................................................................43

*United States v. Lanier,*
   520 U.S. 259 (1997) ...............................................................................33

*United States v. Lara,*
   23 F.4th 459 (5th Cir. 2022) .................................................................32

*United States v. Moore,*
   708 F.3d 639 (5th Cir. 2013) ................................................................32

*United States v. Moyer,*
   674 F.3d 192 (3d Cir. 2012) ..................................................................43

*United States v. Nicholson,*
   961 F.3d 328 (5th Cir. 2020)..................................................................31

*United States v. Sease,*
   659 F.3d 519 (6th Cir. 2011) .................................................................33

*United States v. Thompson,*
   735 F.3d 291 (5th Cir. 2013)..................................................................31

*United States v. Vargas-Ocampo*,
  747 F.3d 299 (5th Cir. 2014) ...................................................................32

**Statutes**

18 U.S.C. § 242 ................................................................................... Passim

18 U.S.C. § 1519 ................................................................................. Passim

18 U.S.C. § 3231 .............................................................................................9

18 U.S.C. § 3742 .............................................................................................9

28 U.S.C. § 1291 .............................................................................................9

**Rules**

Fed. R. App. P. 4 ..............................................................................................9

Fed. R. App. P. 32(a)(5) ...............................................................................49

Fed. R. App. P. 32(a)(6) ...............................................................................49

Fed. R. App. P. 32(f) .....................................................................................49

## SUBJECT MATTER AND APPELLATE JURISDICTION

**Subject Matter Jurisdiction in the District Court**. This case arose from the prosecution of an offense against the laws of the United States of America. This district court has jurisdiction of this case under 18 U.S.C. § 3231.

**Jurisdiction in the Court of Appeals**. This is a direct appeal from a final decision of the U.S. District Court for the Western District of Texas, El Paso Division, entering judgment of conviction and imposing a criminal sentence. This Court has jurisdiction of the appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

On September 26, 2024, Delgado filed his Notice of Appeal. ROA.313. On October 4, 2024, the district court filed its Judgment in a Criminal Case. ROA.326; FED. R. APP. P. 4.

## STATEMENT OF THE ISSUES

1.  The district court erred in denying Appellant's motion for acquittal on both counts predicated on 18 U.S.C. § 242; specifically, the Government failed to prove beyond a reasonable doubt that Appellant's use of force was objectively unreasonable.

2.  The district court erred in denying Appellant's motion for acquittal on the count predicated on 18 U.S.C. § 1519; specifically, the Government failed to prove beyond a reasonable doubt that Appellant acted with the requisite intent to impede, obstruct, or influence an investigation.

## STATEMENT OF THE CASE

### I.     Procedural History.

On March 8, 2023, Miguel Angel Delgado, Jr. was indicted on two counts of deprivation of rights under color of law under 18 U.S.C. § 242, and one count of destruction, alteration, or falsification of records in a federal investigation under 18 U.S.C. § 1519. ROA.20-22. Delgado entered his Waiver of Personal Appearance at Arraignment and Entry of Plea of Not Guilty on March 16, 2023. ROA.36. On March 31, 2023, the district court entered its Order Accepting Waiver of Personal Appearance at Arraignment and directed that a plea of not guilty be entered for Delgado. ROA.45.

On March 12, 2024, Delgado filed his Unopposed Motion for Bench Trial. ROA.65. The district court granted the Motion for Bench Trial on March 13, 2023. ROA.72.

On April 19, 2024, Delgado filed his Motion and Incorporated Memorandum to Dismiss for Pre-Accusatory Delay. ROA.190. Therein, Delgado moved the district court to dismiss the Indictment for violation of his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution. ROA.190. Specifically, Delgado argued

that there was a 996-day delay between the alleged incidents described in counts I and III of the Indictment and the filing of the Indictment itself; further, Delgado argued that there was a 1,235-day delay between the incident described in count II of the Indictment and the filing of the Indictment itself. ROA.191. Delgado claimed that he was denied due process by the Government's inactions and failure to diligently complete those investigations mandated by the Customs and Border Protection Use of Force Policy, Guidelines and Procedures Handbook. ROA.196. Delgado lost the benefit of the investigation that would have produced exculpatory evidence to his advantage. ROA.197. Because of the Government's delay and failure to complete its investigation, a key witness could not provide important evidence after succumbing to cognitive decline. ROA.197. The Government did not initiate any meaningful investigation until over approximately three years after the incidents for which Delgado was indicted, resulting in the loss of evidence and the fading of memories. ROA.197-99.

On April 23, 2024, the Government filed its Response and Opposition to Defendant's Motion to Dismiss. ROA.211. The district court entered its Order on Delgado's Motion to Dismiss on April 23, 2024.

ROA.223. The district court held that Delgado failed to show that the Government delayed seeking an indictment to gain a tactical advantage or for another bad faith purpose. ROA.224. Further, the district court found that Delgado did not show that the delay caused actual prejudice to his defense. ROA.224. The district court then denied Delgado's Motion to Dismiss. ROA.225.

Delgado's bench trial was conducted on April 26, 29, and 30, 2024. ROA.348, 558, 755. After the Government rested its case-in-chief, Delgado moved for a judgment of acquittal on all three counts because the evidence against Delgado was legally insufficient. ROA.745-46. The district court denied Delgado's motion for judgment of acquittal. ROA.748.

On April 30, 2024, the district court found that the Government had proven beyond a reasonable doubt each and every element of the offenses contained in Counts I, II, and III of the Indictment. ROA.773. On September 26, 2024, the district court held a sentencing hearing, and sentenced Delgado to 24 months of incarceration. ROA.808.

On September 26, 2024, Delgado filed his Notice of Appeal. ROA.313.

On October 4, 2024, the district court filed its Judgment in a Criminal Case. ROA.326. Delgado was sentenced to the Federal Bureau of Prisons for a term of 24 months as to each of Counts I, II, and III. ROA.327.[1] The terms were to run concurrently. ROA.327. Upon release from imprisonment, Delgado was ordered to be on supervised release for a term of three years. ROA.328.

## II.    Evidence deduced at trial.

Miguel Angel Delgado, Jr. became a Customs and Border Protection officer in May of 2007. ROA.495-96. Delgado was sent to an 11-week academy for training. ROA.496. He also received on-the-job training. ROA.496.

### A.    October 20, 2019 incident.

Tomas Espinosa, while living in El Paso, Texas, regularly crossed the border back and forth from Mexico to the United States. ROA.357. While trying to reenter United States at the Bridge of the Americas Point of Entry, Espinosa could not find his then wife's resident card – it was forgotten in El Paso. ROA.21, 361. Espinosa admitted to consuming alcohol at a wedding that evening. ROA.392

---

[1] Miguel Delgado is out on bond pending appeal.

Espinosa admitted to becoming upset with a female Customs and Border Protection officer. ROA.365-66. When told by the female officer to "come here;" Espinosa responded, "you come here." ROA.389. Espinosa was accused of flipping off the female officer. ROA.678-79.

Delgado was not the primary officer initially engaging with Espinosa and his wife. ROA.677. Delgado eventually approached Espinosa. ROA.679.

Mark Ferguson has been employed as a chief with CPB since 2021. ROA.511. Ferguson was employed as a supervisor on October 20, 2019 at the Bridge of Americas Point of Entry and was supervising Delgado on the date of the incident. ROA.511-13. When Delgado was engaging with Espinosa, Ferguson headed over to where Delgado to "ensure nothing inappropriate would transpire or violation of policy." ROA.516-17. Delgado engaged with the Espinosa, had him stand up, and asked a few more questions. ROA.517. According to Ferguson, Espinosa appeared to take a different stance or posture. ROA.517. Delgado then put his hands on Espinosa to provide an escort hold. ROA.517. Espinosa tried to pull back, at which point in time he was taken down to the floor and was handcuffed. ROA.517 Ferguson testified that at this time Espinosa was

not being compliant. ROA.517. Ferguson testified that he did not consider any of these actions by Delgado to be inappropriate. *See* ROA. 517.

Delgado then escorted Espinosa to a different area. ROA.374. Espinosa testified that Delgado did not give him any instructions on where to go. ROA.374. Espinosa testified that Delgado pushed him against a door, causing his head to make contact with the door. *See* ROA.376-77. Espinosa claimed this made him feel lightheaded and caused his head to hurt. ROA.377.

Mattew Harvey, an expert witness for the Government, reviewed video footage of the incident. *See* ROA.647-744. Harvey testified that he did not witness on the video Espinosa acting in any way that was criminal that would justify using excessive force. ROA.670. Harvey opined that there was no reason to go out and engage with Espinosa. ROA.680. He testified that being flipped off and being exposed to derogatory language did not justify Delgado's behavior. ROA.681. Harvey opined that Delgado both instigated and escalated the incident with Espinosa. ROA.682-83. He claimed that the video shows signs that Delgado intended to slam Espinosa into a door. ROA.693-94. Harvey testified that he did not see any indication of resistance on the part of Espinosa. ROA.694. Harvey

opined that Delgado's use of force was neither reasonable nor appropriate. ROA.695.

Harvey also testified that any officer witnessing an unnecessary use-of-force has a duty to intervene. ROA.714. Though Delgado's supervisor was present during the incident, he did not intervene. ROA.715-16. Harvey did not witness any other officers intervene. ROA.716.

Harvey admitted that, in reaching his opinions, he did not interview any of the officers present. ROA.701. He did not review any medical records, nor did he speak with Espinosa. ROA.701-02. He further admitted that there are certain nuanced movements and gestures a person might make that may not be captured on video. ROA.705. Harvey admitted that Delgado's perception of a potential threat may be different from Harvey's own perception of the situations depicted on the video. ROA.726. He testified that "[e]very officer has the perception of the threat of the interaction they are in or they witnessed." ROA.726. An officer has to judge quickly what could happen, and this happens within a manner of seconds. ROA.731.

Ferguson confirmed that Espinosa received a disorderly conduct

citation. ROA.537. Ferguson testified that medical attention was not offered to Espinosa because "[h]e was not injured." ROA.539. He also confirmed that Espinosa did not make an outcry of injury to any officer. ROA.540. Ferguson stated that Delgado's conduct related to Espinosa was conduct unbecoming to an officer and neither reasonable nor necessary. ROA.556.

Espinosa testified that after he was released, he visited a hospital. ROA.380. He claimed that he was bruised and scratched as a result of the incident. ROA.383-85.

## B.     June 15, 2020 incident.

On June 15, 2020, Ricardo Estrada was visiting his mother in Mexico. ROA.419. On the date in question, Estrada was returning from Mexico to the United States through the Bridge of the Americas Port of Entry. ROA.21, 423. On the day of the incident, Estrada was on probation for a charge of manufacturing/delivery in the State of Texas. ROA.458.

Upon arriving at the Port of Entry, Estrada was flagged for narcotics and currency smuggling. ROA.1061. While waiting to be processed, Estrada approached the window without being called and asked Delgado why the officers needed to speak with him the way they

did. ROA.1061. Delgado explained that every time Estrada leaves the country he is subject to inspection. ROA.1061. Estrada, who was clearly inebriated, became irate and raised his tone with Delgado. ROA.1061. Delgado told him that he was in Customs and Border Protection's "house," and he could not continue to yell and make up his own rules. ROA.1061. Estrade became even more upset and began laughing at and mocking Delgado. ROA.1061. Delgado, in attempt to de-escalate the situation, told Estrada to sit and calm down and then reapproach Delgado when he was ready to be compliant. *See* ROA.1061. Estrada continued to yell, and then verbally threatened Delgado by yelling at Delgado in Spanish that "[t]his might be your house but when we get outside, that is a different story." ROA.1061.

Delgado perceived this "was a direct threat on his life[.]" ROA.1061. Delgado proceeded to call over Estrada to place him in restraints and pat him down in order to ensure that he was not carrying any weapons, and to also attempt to contact Federal Protective Services to see if anyone would be able to respond. ROA.1061. Upon approaching Delgado, Estrada "walked up in a very aggressive manner and immediately got in…Delgado's face[.]" ROA.1061. Delgado placed

Estrada in an escort hold and placed him in some chairs. ROA.1061. Delgado then turned Estrada around while sitting in the chair in order to place him in hands restraints, and Estrada continued to yell and argue with Delgado. ROA.1061. Estrada kept trying to push back and push Delgado off of his back; Delgado held Estrada in place until another officer responded and helped Delgado place Estrada in hand restraints. ROA.1061. Estrada received a cut to the bridge of his nose while being placed in hand restraints. ROA.1061.

Estrada testified that Delgado told him that the Port of Entry was not Delgado's "house." ROA.433. Estrada admitted to telling Delgado that the Port of Entry was not his "house." ROA.433. Estrada told Delgado that "I will still cross" and that "when I am out there, that's not your house." ROA.549.

Estrada claimed he was then grabbed by Delgado and thrown on some seats. ROA.439. Delgado accused Estrada of making threats. ROA.440. Estrada denied making any threats. ROA.440. Estrada testified that Delgado twisted Estrada's arms behind his back and pushed him down into some chairs. ROA.440. Estrada claimed he began to cry because of the pain of having his head pressed against the seat and

his arm twisted behind his back. ROA.442. Eventually Estrada's nose began to bleed. ROA.446.

Caros Valenzuela is employed by Customs and Border Protection. ROA.460. Valenzuela previously worked with Delgado at passport control secondary and worked with him for approximately four months. ROA.461. Valenzuela was working with Delgado at the Bridge of the Americas Port of Entry on June 15, 2020. ROA.462.

Upon arriving on the scene after taking a smoke break, Valenzuela encountered Delgado yelling at Estrada. ROA.468. Delgado had Estrada kneeled down against the chairs of the hard secondary. ROA.468. At the time, Valenzuela assumed Estrada was being "unruly" towards Delgado. ROA.468. Valenzuela stated that he no longer believed Estrada was being unruly when pushed against the chairs. ROA.469. He heard Delgado tell Estrada not to threaten anyone, but Valenzuela did not personally overhear Estrada threaten anyone. ROA.472. Valenzuela observed that Estrada had a laceration at the top of his nose, and that Estrada was crying and upset. ROA.478.

Valenzuela witnessed Estrada apologizing to Delgado for threatening a federal agent; Estrada apologized while kneeling.

ROA.478. Valenzuela admitted that when he gave a previous statement he did not make any statement or notation that Delgado acted inappropriately. ROA.484. Valenzuela originally believed that Estrada was resisting when he encountered the scene and only changed his mind after reviewing the video with the Government. ROA.484. Valenzuela had no knowledge of the interactions between Delgado and Estrada prior to encountering the scene. ROA.487. He admitted that he did not review the video footage of Delgado and Estrada's interaction prior to arriving at the scene, and that his testimony was not predicated on those prior interactions. ROA.490. Valenzuela also admitted that he did not know what led to the event, and that he only observed Estrada being allegedly compliant after arriving on the scene. ROA.492.

Mark Ferguson was also working on June 15, 2020. ROA.521. Ferguson witnessed part of the exchange between Delgado and Estrada, but not all of the exchange. ROA.523. Ferguson testified that he would have stopped Delgado's escalation because it was unnecessary. ROA.523. Delgado told Ferguson that Estrada got a cut on his nose "[w]hen he was turning him around in the chair to place the handcuffs on him,…the subject's face went down in between the chairs, and it is how he got a cut

on his nose." ROA.525. Ferguson testified that Delgado attempted to put handcuffs on Estrada; Estrada was trying to reposition himself; and Delgado pushed his head and his face back down into the chairs. ROA.531. Ferguson claimed that this is not how officers are trained to restrain a subject. ROA.531. Ferguson confirmed that Estrada did not want to press charges. Ferguson stated that Delgado's conduct related to Estrada was conduct unbecoming to an officer and neither reasonable nor necessary. ROA.556.

Mattew Harvey testified that Delgado and Estrada initially engaged in a verbal exchange, and Delgado subsequently told Estrada to sit down. ROA.658. According to Harvey, Delgado then verbally engaged Estrada again. ROA.658. Harvey characterized this as a verbal confrontation. ROA.658. He opined that there was no reason to continue to engage with Estrada. ROA.659. In Harvey's opinion, after reviewing the video footage, he did not see Estrada not follow a command. ROA.660. Harvey testified that he did not observe any threatening behavior from Estrada, but that Delgado appeared to be agitated or angry. ROA.663. Throughout the interaction, Estrada allegedly repeated that he was not threatening Delgado. ROA.664. Harvey opined that Estrada did not

appear to instigate before Delgado placed his hands on Estrada. ROA.666-67. He further alleged that he did not witness Estrada commit a crime that would require force. ROA.668. Harvey admitted that an officer was present and viewing Delgado's interaction with Estrada, and that this officer did not intervene; Harvey further admitted that the witnessing officer had a duty to intervene if he saw unnecessary and/or excessive use-of-force. ROA.718-19.

Estrada admitted that he refused the medical attention that was offered. ROA.454. He claimed he did so because he wanted to leave and didn't want any problems. ROA.454. Estrada also indicated that he did not want to prosecute. ROA.459.

Michael Navarro is employed as a special agent with the Department of Homeland Security Office of Inspector General. ROA.502-03. Navarro testified that Delgado's use-of-force did not seem reasonable and necessary on June 15, 2020. ROA.506.

Ferguson had Delgado write a report on the incident. ROA.527. In an Inspection Operational Incident Log, Delgado wrote that Estrada "walked up in a very aggressive manner and immediately got in" Delgado's face. ROA.527-28. Ferguson testified that he would not agree

with this assessment after revieing the video footage. ROA.528. Delgado also wrote that he "turned the subject around while sitting in the chair in order to place him in hand restraints." ROA.529. After reviewing the video footage, Ferguson would not agree with this assessment. ROA.529. Further, Delgado wrote that "the subject continued to yell and argue with" Delgado. ROA.529. After reviewing the video footage, Ferguson would not agree with this assessment. ROA.529. Lastly, Delgado wrote "[t]he subject kept trying to push back and push [Delgado] off of his back." ROA.529 After reviewing the video footage, Ferguson would not agree with this assessment. ROA.529.

Harvey testified that he found several portions of Delgado's report to be inaccurate. ROA.652-53. He testified that Delgado wrote that Delgado turned Estrada in his chair in order to place him in hand restraints; Harvey found on the video footage that Estrada appeared to be on his knees with his head up against the back of the chairs and the wall, not sitting upright until he got handcuffed. ROA.654-55. Harvey stated that Delgado wrote that Estrada kept trying to push back and push Delgado off of his back, but Harvey did not notice any movement to indicate that Estrada was resisting or pushing back against Delgado.

ROA.655.

## C.    Other Testimony.

Louis Stockley is a retired Customs and Border Protection officer and instructor. ROA.594. In 2006, he became a Less Lethal Force instructor. ROA.595. The trainings Stockley taught included arrest techniques, handcuffing, OC spray, baton, and escorts. ROA.595.

CBP has a use-of-force policy. ROA.598. The use-of-force policy is the guideline for how an officer is to conduct themselves while applying force to a subject or in a possible situation. ROA.598. The policy specifies the level of force that can be used in certain situations. ROA.598. The policy must be followed by any person in Custom and Border Protection. ROA.599. Use-of-force is covered by CPB on a quarterly basis. ROA.601. Stockley trained Delgado in use-of-force. ROA.602.

In terms of how aggressive the individual must be before the officer uses defensive tactics, Stockley testified: "We try to instruct each officer. Each officer has to make their own determination based on things like their size, ability versus the subject's size and ability. What offense did they commit, how much of a threat they are, and they have to make a determination themselves on what amount of force to use." ROA.607-08.

Officers are taught to assess threats by analyzing if an individual has the means to carry out the threat, if they have the intent to do the threat, and if they have the opportunity to do it. ROA.611. If an individual is saying "I was not threatening you," an officer might still look to physical cues, like the person taking an aggressive stance, having clenched fists, raising their hands, and drawing back. ROA.613.

Stockley testified that CBP officers are taught to process intoxicated individuals if they are not a threat or otherwise breaking the law. ROA.613-14. If a person is on probation and is intoxicated, but doesn't make furtive gestures and doesn't act combative, then de-escalation should be practiced. ROA.615. Stockley stated that it is not too common at port of entries for people to use expletives or give an officer the finger. ROA.617. If someone is not violating the law and is not a threat, the engaging officer should just process them. ROA.617.

Prior to the summer of 2020, CBP did not have a specific training on de-escalation. ROA.625. Stockley testified that each officer has to make their own determination regarding potential risk. ROA.627. The officer's determination is based on perception, training, and experience. ROA.628. In making a risk determination, officers consider the size of the

individual, verbal sparring, intoxication, clenched fists, verbal threats, their stance, and criminal history. ROA.629-30. Stockley specifically agreed that real-world experiences happen in a matter of seconds. ROA.630.

Stockley testified that grabbing someone's arm and jerking it up until they cry out in pain would not be using pain compliance properly. ROA.634-35. Pain compliance should not be used if the subject is being compliant. ROA.635. According to Stockley, if a person becomes compliant and stops resisting, the use-of-force used to make them compliant should cease. ROA.636. Stockley opined that use-of-force does not include slamming somebody against a door because the subject didn't follow the officer's command on where to walk. ROA.636. Use-of-force also does not include slamming a person's head against a chair. ROA.637. A subject being in handcuffs lowers the threat to the officer. ROA.642-43. Stockley testified that an officer cannot use pain to punish. ROA.643.

## SUMMARY OF THE ARGUMENT

First, the Government failed to prove beyond a reasonable doubt that Officer Miguel Angel Delgado, Jr.'s use of force was objectively unreasonable. To prove a violation of Section 242, the government must

prove beyond a reasonable doubt that the defendant: (1) willfully; (2) deprived another of a federal right; (3) under color of law. The Fourth Amendment's protection against unreasonable search and seizures requires that officers refrain from using excessive force, that is, more force than is reasonably necessary, when effectuating an arrest. In order to make a case for excessive force in violation of the Fourth Amendment, the Government must show (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.

Here, Officer Delgado, in two tense, uncertain, and rapidly evolving situations, responded appropriately with the level of force that he thought was commensurate with the situation. In both predicaments, Delgado was confronted by individuals who were inebriated and noncompliant. Delgado perceived one of those individuals to be threatening his safety. Delgado endeavored to restrain both of the uncooperative individuals. In the heat of the moment, as Delgado proceeded with his best judgment through different volatile situations, two discreet events took place that the Government seized on to form the basis of a conviction: in the case of Tomas Espinosa, Espinosa's head

made contact with a door as Delgado escorted him to a safer area; in the case of Ricardo Estrada, Estrada's nose was lacerated while Delgado attempted to restrain Estrada as Estrada resisted atop a set of chairs. Detentions, especially at the border, are often messy, unscripted affairs that require spilt-second decisions based on sometimes indefinite information. And Delgado's execution, while perhaps imperfect in hindsight, was nevertheless objectively reasonable in the circumstances of the moment.

Second, the Government failed to prove beyond a reasonable doubt that Officer Delgado acted with the requisite intent to impede, obstruct, or influence an investigation. To obtain a conviction under § 1519, the Government is required to prove beyond a reasonable doubt that: (1) the defendant made a false entry in a record, document, or tangible object; (2) the defendant did so knowingly; and (3) the defendant intended to impede, obstruct, or influence the investigation or proper administration of a matter within the jurisdiction of any department or agency of the United States. The Government must specifically prove that the defendant acted with the intent to impede, obstruct, or influence an investigation.

Here, the Government merely showed that Delgado authored one Incident Log Report, and that this Incident Log Report was later analyzed by agents for the Customs and Border Protection Office of Professional Responsibility and Department of Homeland Security Office of Inspector General. But the government wholly failed to prove that Delgado completed the Incident Log Report with the specific intent to impede these or any other agents in an investigation.

## ARGUMENT AND AUTHORITIES

### I.     Standard of Review.

This Court reviews the denial of a defendant's Motion for Judgment of Acquittal *de novo*. *United States v. Thompson*, 735 F.3d 291, 301 (5th Cir. 2013). Any review of challenges to the sufficiency of the evidence is "highly deferential to the verdict." *United States v. Cervantes*, 107 F.4th 459, 465 (5th Cir. 2024) (*quoting United States v. Nicholson*, 961 F.3d 328, 338 (5th Cir. 2020)). This Court reviews "the evidence and all reasonable inferences in the light most favorable to the prosecution and to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (*quoting United States v. Lara*, 23 F.4th 459, 470 (5th Cir. 2022)). But this Court

is still "empowered to consider ... whether the inferences drawn by a [trier of fact] were rational, as opposed to being speculative or insupportable, and whether the evidence is sufficient to establish every element of the crime." *Id.* (*quoting United States v. Vargas-Ocampo*, 747 F.3d 299, 302 (5th Cir. 2014) (en banc)).

## II. Delgado did not engage in an objectively unreasonable use-of-force, in violation of 18 U.S.C. § 242.

The Government charged Miguel Angel Delgado, Jr. with two counts of deprivation of rights under color of law under 18 U.S.C. § 242. ROA.20-21.

To prove a violation of Section 242, the government must prove beyond a reasonable doubt that the defendant: (1) willfully; (2) deprived another of a federal right; (3) under color of law. *United States v. Moore*, 708 F.3d 639, 645 (5th Cir. 2013) (*citing United States v. Brugman,* 364 F.3d 613, 616 (5th Cir. 2004)). "Willfulness," as defined within the context of section 242, requires a finding that a defendant acted "in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite." *Brugman*, 364 F.3d at 616 (*quoting Screws v. United States,* 325 U.S. 91, 105 (1945)). To sustain a conviction for deprivation of rights under the color of law under 18 U.S.C. § 242, the

government must show that a constitutional violation has occurred. *United States v. Sease*, 659 F.3d 519, 523 (6th Cir. 2011). Section 242 "incorporate[s] constitutional law by reference ..." *Id.* (*quoting United States v. Lanier,* 520 U.S. 259, 265 (1997)). Liability can only be imposed where "in the light of the pre-existing law the unlawfulness [under the Constitution is] apparent." *Id.* (*quoting Lanier,* 520 U.S. at 271–72; *also citing Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

The Fourth Amendment's "protection against unreasonable search and seizures requires that officers refrain from using excessive force, that is, more force than is reasonably necessary, when effectuating an arrest." *United States v. Diaz*, 498 F. App'x 407, 411 (5th Cir. 2012) (*quoting Brugman,* 364 F.3d 613, 616). "It is clearly established law in this circuit that in order to state a claim for excessive force in violation of the [Fourth Amendment], a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Id.* (*quoting Bazan v. Hidalgo Cnty.,* 246 F.3d 481, 487 (5th Cir. 2001)).

Whether force is reasonable in an excessive force case is viewed under an objective standard, *i.e.,* "the question is whether the officers'

actions are 'objectively reasonable' in light of the facts and circumstances confronting them," "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Brugman*, 364 F.3d at 616 (*citing Graham v. Connor, 490 U.S. 386, 396* (1989)). The use of force is not excessive and unreasonable if "the officer['s] actions are objectively reasonable in light of the facts and circumstances confronting [him], without regard to their underlying intent or motivation." *Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023) (*quoting Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021); *also citing Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)). And the reasonableness is "judged from the perspective of a reasonable officer on the scene," instead of the "20/20 vision of hindsight." *Hays*, 65 F.4th at 744 (*quoting Stone*, 993 F.3d at 384). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396) (cleaned up). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the

amount of force that is necessary in a particular situation." *Id.* at 396–97.

### A. Delgado, in two tense, uncertain, and rapidly evolving situations, responded appropriately with the level of force that he thought was commensurate with the situation.

Again, in determining whether a use of force was reasonable under the Fourth Amendment, the overarching question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (*quoting Graham*, 490 U.S. at 397). The use of force must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) (*quoting Poole*, 691 F.3d at 627). This test "allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense , uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (*quoting Graham,* 490 U.S. at 397).

Here, Officer Delgado was faced with two separate "tense, uncertain, and rapidly evolving" situations where he had to make "split-

second" decisions regarding the use of force. With Tomas Espinosa, Delgado was confronted with an inebriated individual. *See* ROA.392. Espinosa was noncompliant and combative with a fellow officer. *See* ROA.389, 678-79. Delgado engaged with Espinosa, had him stand up, and asked him some questions; in response, Espinosa took a different, more hostile stance or posture. *See* ROA.517. Delgado then put his hands on Espinosa to provide an escort hold. ROA.517. Espinosa tried to pull back, at which point in time he was taken down to the floor and was handcuffed. ROA.517. Mark Ferguson, who was Delgado's supervisor on October 20, 2019, confirmed that Espinosa was being noncompliant during this interaction, and that Delgado did not use excessive force up to this point. *See* ROA.517. While escorting a previously unruly, noncompliant Espinosa, Delgado engaged in a movement that caused Espinosa's head to make some contact with a door. ROA.376-77.

Further, with Ricardo Estrada, Officer Delgado encountered another inebriated individual, this time one who was on probation for a charge of manufacturing/delivery in the State of Texas. ROA.458, 1061. When faced with a routine inspection, Estrada became irate and raised his tone with Delgado, even mocking Delgado. ROA.1061. Estrada then

threatened Delgado, yelling that "[t]his might be your house but when we get outside, that is a different story." ROA.1061. When Delgado attempted to place Estrada in restraints, Estrada "walked up in a very aggressive manner and immediately got in…Delgado's face[.]" ROA.1061. While Delgado endeavored to restrain Estrada, Estrada kept trying to push back and push Delgado off of his back. ROA.1061. Estrada received a cut to the bridge of his nose while being placed in hand restraints. ROA.1061.

Officer Delgado was confronted with two separate situations at the U.S./Mexico border that were tense, uncertain, and rapidly evolving. In both situations, the individuals Delgado came into contact with were intoxicated and uncooperative. One of the individuals, in Delgado's perspective, threatened Delgado's physical safety. In both situations, Delgado attempted to restrain the noncompliant individuals. The Government has now convicted Delgado on the basis of two discreet instances that grew out of these chaotic and unpredictable confrontations: in the case of Espinosa, for causing his head to make contact with a door while escorting Espinosa to a safer area; in the case of Estrada, for Estrada's nose being lacerated while Delgado attempted

to restrain Estrada as Estrada resisted atop a set of chairs. But no detention is ever perfect and without danger; and not every harm or injury that results from a detention is unconstitutional. Indeed, "[t]he fact that [an individual] is assaulted [or…] injured…by state officials does not necessarily mean that he is deprived of any right protected or secured by the Constitution or laws of the United States." *Pullen v. United States*, 164 F.2d 756, 760 (5th Cir. 1947).

Delgado responded appropriately with the level of force that he thought was commensurate with the situation. The Government simply did not prove beyond a reasonable doubt that Delgado used an objectively unreasonable amount of force in his interactions with Espinosa and Estrada. The evidence was therefore insufficient to sustain Delgado's conviction for either Count of deprivation of rights under color of law under 18 U.S.C. § 242.

### B. *United States v. Diaz* shows that Delgado's responses to ongoing and unpredictable situations were not objectively unreasonable.

In *United States v. Diaz*, at least three individuals attempted to illegally enter the United States while transporting drugs. *Diaz*, 498 F. App'x at 409. CBP officers detected the illegal activity and began

searching for the individuals; later, two individuals were found hiding and were taken in custody. *Id.* Both men were arrested, placed in prone positions, and remained there without incident. *Id.* Both men remained still and compliant throughout the duration of their arrest and time in custody. *Id.*

Diaz arrived after the individuals were in custody and began asking where the drugs were located. *Id.* Diaz took custody of one of the individuals who, at the time of Diaz's arrival, was laying face-down on the ground with his hands handcuffed behind his back. *Id.* Evidence was introduced at trial that Diaz placed his knee on the individual's back, grabbed the chain of his handcuffs, and pushed man's arms toward his head up to a 90–degree angle, causing the man to cry out in pain as Diaz asked about the whereabouts of any drugs. *Id.* at 409-10. Diaz performed this action after asking someone to hold down the individual's legs. *Id.* at 410. Diaz stood the man up and then swept his legs out from under him, taking him to the ground, and Diaz kicked the man. *Id.* All the testifying witnesses agreed that, while in Diaz's custody, the man never made any aggressive gestures or attempted to flee. *Id.*

The Government eventually charged Diaz in part with one count of depriving another person of his rights thereby causing "bodily injury" under 18 U.S.C. § 242. *Id.* at 410. He was ultimately convicted of this count by a jury. *Id.* On appeal, Diaz in part argued that the evidence was insufficient to support his conviction *Id.* Specifically, Diaz contended that because of the risks associated with CBP actions against drug smugglers, among other things, the evidence was insufficient to establish that Diaz acted willfully and not in aid of some legitimate police objective. *Id.* at 413.

In affirming the district court's judgment, this Court noted that the evidence showed that, at the time that Diaz began his confrontation with the individual, the scene was non-threatening, and any risk had otherwise been mitigated. *Id.* at 413. Specifically, any at-large co-conspirator had already returned to Mexico, numerous CPB agents were present, the scene was secure, and the two arrestees remained still and compliant throughout the incident. *Id.*

*Diaz* stands in marked contrast to the present matter. Whereas Diaz entered a scene where any threat had already been neutralized, Officer Delgado found himself in situations that were unpredictable and

fluid. For Diaz, the arrestee was still and compliant, handcuffed and in the prone position, upon Diaz's initial encounter. For Delgado, the opposite was true: Espinosa was intoxicated and being noncompliant with officers; when Delgado attempted to question Espinosa, Espinosa took an aggressive stance or posture; and when Delgado attempted to place Espinosa in an escort hold, Espinosa pulled back, resulting in him being taken down to the floor and being handcuffed. ROA.365-66, 392, 517, 678-79. Estrada was both inebriated and on probation for a charge of manufacturing/delivery in the State of Texas; upon being delayed in crossing, Estrada became irate and raised his tone with Delgado, eventually issuing a physical threat to Delgado; Estrada approached Delgado in an aggressive and confrontational manner; and Estrada actively resisted while Delgado attempted to place him in restraints. ROA.458, 1061. While Diaz's use-of-force was objectively unreasonable given that no threat or concern existed at the time he engaged in force, the same cannot be said of Delgado; indeed, Delegado exercised force in evolving and precarious situations where the level of threat was an open question.

Delgado responded reasonably in his encounters with both

Espinosa and Estrada, and the Government did not prove beyond a reasonable doubt that Delgado used an objectively unreasonable amount of force. The evidence was therefore insufficient to sustain Delgado's conviction for either Count of deprivation of rights under color of law under 18 U.S.C. § 242. This Court should reverse the district court's judgment and enter an order acquitting Officer Delgado of all charges under 18 U.S.C. § 242.

## III. The Government failed to prove beyond a reasonable doubt that Delgado acted with the requisite intent to impede, obstruct, or influence an investigation.

The Government charged Miguel Angel Delgado, Jr. with one count of destruction, alteration, or falsification of records in federal investigations under 18 U.S.C. § 1519. ROA.21-22.

To obtain a conviction under § 1519, the Government is required to prove beyond a reasonable doubt that: (1) the defendant made a false entry in a record, document, or tangible object; (2) the defendant did so knowingly; and (3) the defendant intended to impede, obstruct, or influence the investigation or proper administration of a matter within the jurisdiction of any department or agency of the United States. *United States v. Hassler*, 992 F.3d 243, 246–47 (4th Cir. 2021). The Government

must specifically prove that the defendant acted with the intent to impede, obstruct, or influence an investigation. *See United States v. Kernell*, 667 F.3d 746, 756 (6th Cir. 2012). By the express language of the statute, no liability will be imposed for knowingly falsifying documents *without* an "intent to impede, obstruct, or influence a matter." *United States v. Moyer*, 674 F.3d 192, 212 (3d Cir. 2012) (*citing* 18 U.S.C. § 1519; *also citing Kernell,* 667 F.3d at 753) (emphasis in original).

Here, the Government failed to prove beyond a reasonable doubt that Officer Delgado acted with the requisite intent to impede, obstruct, or influence an investigation. The government generally showed that Delgado completed an Incident Log Report related to the June 15, 2020 encounter with Estrada, and that this Incident Log Report was subsequently reviewed by agents for the Customs and Border Protection Office of Professional Responsibility and Department of Homeland Security Office of Inspector General. *See* ROA.494-506. But the government failed to prove that Delgado completed the Incident Log Report with the specific intent to impede these or any other agents in an investigation. Indeed, the Government failed to deduce any evidence that Delgado knew that this matter would be investigated by these or any

other agents. *See generally* ROA.348-777.

In *United States v. Hunt*, Hunt was convicted under 18 U.S.C. § 1519 for knowingly making a false entry into a police incident report with the intent to impede, obstruct, or influence an FBI investigation. *United States v. Hunt*, 526 F.3d 739, 741 (11th Cir. 2008). On the date in question, Hunt was patrolling a neighborhood known for drug activity with other law enforcement officers. *Id*. The officers noticed an individual engaging in suspicious activity and stopped him to question him; upon being stopped, the individual became agitated. *Id*. The order was eventually issued to arrest the individual; when Hunt reached the individual, he grabbed the man, placed him in a bearhug, and threw him to the ground, causing the man to hit his head on the concrete. *Id*. at 742.

On the night of the man's arrest, Hunt filled out a use of force report. *Id*. The FBI subsequently launched an investigation into the circumstances surrounding the man's arrest. *Id*. During the course of the investigation, Hunt admitted that his statement in the police report was inaccurate. *Id*. Ultimately, a grand jury indicted Hunt on the § 1519 charge for knowingly making a false statement in his police report with

the intent to impede a federal investigation. A jury then convicted Hunt of the § 1519 charge. *Id.* at 743.

On appeal, Hunt argued in part that the evidence was insufficient to convict him under § 1519 because the evidence did not show that he intentionally made a false statement with the intent to influence, obstruct, or impede a federal investigation. *Id.* at 744. In affirming the judgment, the United States Court of Appeals for the Eleventh Circuit noted that "[t]he Government put forth evidence Hunt knew claims of excessive force would be investigated by the FBI[.]" *Id.* at 745. Further, testimony from the investigating FBI agent showed that "Hunt continued to support his false statements one year after filing the report and only changed his story after being confronted by [the FBI agent]." *Id.*

Here, the Government put forth no evidence that Officer Delgado knew that claims of excessive force would be investigated by the Customs and Border Protection Office of Professional Responsibility, the Department of Homeland Security Office of Inspector General, or any other federal agency. *See generally* ROA.348-777. Further, there is no evidence that Delgado continued to support his statements either before, during, or after an interview with an investigating agent; indeed, there

is no evidence that Delgado was ever interviewed at all. ROA.494-506. The Government simply failed to prove beyond a reasonable doubt that Officer Delgado had the requisite intent to impede, obstruct, or influence an investigation.

The Government failed to prove beyond a reasonable doubt that Officer Delgado acted with the necessary intent to impede, obstruct, or influence an investigation. The evidence was therefore insufficient to sustain Delgado's conviction for destruction, alteration, or falsification of records in federal investigations under 18 U.S.C. § 1519. This Court should reverse the district court's judgment and enter an order acquitting Officer Delgado of all charges under 18 U.S.C. § 1519.

## CONCLUSION

For the foregoing reasons, this Court should vacate Appellant Miguel Angel Delgado, Jr.'s conviction for counts I, II, and III and enter an order acquitting Appellant of all charges. Appellant also asks this Court to award any further relief, whether at law or in equity, to which he may show himself to be justly entitled.

April 16, 2025

Respectfully submitted,

**CLOUTHIER LAW, PLLC**

*/s/ Susan J. Clouthier*
Susan J. Clouthier
Tex. Bar No. 24062673
Gage S. Fender
Tex. Bar No. 24093590
9950 Woodloch Forest Dr, Ste 1300
The Woodlands, TX 77380
Telephone: (346) 443-4300
Fax: (346) 443-4343
susan@clouthierlaw.com

**Attorneys for Appellant
Miguel Angel Delgado, Jr.**

## CERTIFICATE OF SERVICE

I certify that on April 16, 2025, the foregoing Brief was filed electronically using the Court's CM/ECF system, which will give notice of the filing to counsel for the Government.

I further certify that (1) the required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

I further certify that I will mail the correct number of paper copies of the foregoing document to the Clerk of Court when requested.

I further certify that no generative artificial intelligence program was used in drafting the document presented for filing.

/s/ *Susan J. Clouthier*
Susan J. Clouthier

**Attorney for Appellant**
**Miguel Angel Delgado, Jr.**

CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of <u>Fed. R. App. P. 32(a)(7)(B)</u> because this brief contains 7,065 words, excluding the parts of the brief exempted by <u>Fed. R. App. P. 32(f)</u>. This brief complies with the typeface requirements of <u>Fed. R. App. P. 32(a)(5)</u> and the type style requirements of <u>Fed. R. App. P. 32(a)(6)</u> because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook font size 14.

*/s/ Susan J. Clouthier*
Susan J. Clouthier

**Attorney for Appellant
Miguel Angel Delgado, Jr.**
